AO 106 (Rev. 04/10) Application for a Search Warrant  RAS

FILED

# UNITED STATES DISTRICT COURT
for the
Southern District of California

JAN 19 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEP.

In the Matter of the Search of ) 
*(Briefly describe the property to be searched or identify the person by name and address)* )
) Case No.
Black Verizon Motorola Droid )
Cellular Telephone ) **18MJ0281**
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846, 952, 960, 963 | Possession with intent to distribute controlled substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of TFO Pamela Trongard

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Pamela Trongard, TFO-HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/19/18

*Judge's signature*

City and state: San Diego, CA       Hon. Barbara L. Major, United States Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>(1) Black Samsung Cellular Telephone<br>Model No. SM-J327A<br>IMEI: 357153086323488<br><br>(2) Black Verizon Motorola Droid<br>Cellular Telephone | Case No.:<br><br>**AFFIDAVIT OF TASK FORCE OFFICER PAMELA TRONGARD IN SUPPORT FOR A SEARCH WARRANT** |

I, Pamela Trongard, being duly sworn do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), for the following electronic devices (collectively **"Target Devices"**) seized from Andres Gomez Flores ("GOMEZ") on January 11, 2018:

   (1) Black Samsung Galaxy J3
   Model No. SM-J327A
   IMEI: 357153086323488
   **(Target Device #1)**;

   (2) Black Verizon Motorola Droid Cellular Telephone
   **(Target Device #2)**;

2. The **Target Devices** were seized from GOMEZ on January 11, 2018 at the time of his arrest. It is believed that the **Target Devices** were used by GOMEZ to communicate with conspirators during a drug smuggling event involving fentanyl in the Southern District of California, S.D. Cal. Crim. Case No. 18mj0159-BGS. Probable cause exists to believe that the **Target Devices** contain evidence relating to violations of Title 21,

United States Code, Sections 841, 846, 952, 960, and 963. The **Target Devices** are currently in the possession of HSI, located at Niels Bohr Court, San Diego, California 92154.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I submit this Affidavit in support of the application to search the **Target Devices** for and to seize the items set forth in Attachment B (incorporated herein) which I believe will be found in the items to be searched as described in Attachment A-1 and A-2 (incorporated herein).

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

5. I am a Federal Officer, currently employed with U.S. Customs and Border Protection (CBP), assigned as a Task Force Officer with HSI. In this capacity, I investigate and assist in narcotics cases involving, but not limited to, the purchase, possession, sales, production and distribution of illegal narcotics and the laundering of its proceeds. As a TFO, I have received instruction in conducting criminal investigations, including electronic evidence. Prior to becoming a Federal Officer, I completed the 16-week academy at the Federal Law Enforcement Training Center (FLETC) in Glenco, Georgia, along with receiving training in money laundering and asset forfeiture, mobile device exploitation and forensics, and counterintelligence. I have been in law enforcement for 13 years and a TFO for over 3 years. I also have a bachelor's degree in Liberal Arts from the University of Minnesota.

6. Based upon my training and experience as a Federal Officer, and consultations

2

with law enforcement officers experienced in narcotics trafficking and controlled substance manufacture and distribution investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Conspirators involved in the manufacture, distribution and importation of controlled substances and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular telephones because they can easily arrange to meet co-conspirators and or potential buyers at predetermined locations.

    f. Conspirators involved in the manufacture, distribution and importation of controlled substances will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    g. Conspirators involved in the manufacture, distribution and importation of controlled substances often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    h. The use of cellular telephones by conspirators or drug smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

7. Based upon my training and experience as a Federal Officer, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yield evidence:

   a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of fentanyl or some other federally controlled substances within the United States, or conspiracy thereof;

   c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of fentanyl or some other federally controlled substances within the United States, or conspiracy thereof;

   d. tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of fentanyl or some other federally controlled substances within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

4

## PROBABLE CAUSE

8. On January 11, 2018, GOMEZ entered the United States from Mexico through the Otay Mesa, California, Port of Entry (POE) driving a 2007 Honda Element bearing California license plate 7HJW125 (the "Vehicle"). Upon closer inspection of the vehicle, a non-factory compartment was located and eight (8) packages, weighing approximately 13.28 kilograms (29.21 pounds), which field-tested positive for N-phenyl-N-[1-(2-phenylethly)-4-piperidiny] propanamide ("Fentanyl"), a Schedule II Controlled Substance, were found inside.

9. GOMEZ was placed under arrest and HSI Special Agent Brent Moores and DEA Special Agent Denise Garcia-Campbell responded to the POE. During the interview, GOMEZ admitted that he was to be paid $5,000 USD to deliver the drug laden vehicle to Los Angeles, California.

10. Incident to his arrest, agents seized the **Target Devices** from GOMEZ's vehicle. During the interview, GOMEZ informed the agents that the **Target Devices** belonged to him and; further, were utilized to coordinate the delivery of the vehicle containing the narcotics.

11. Additionally, record checks reveal that GOMEZ has regularly crossed the border in the Vehicle since October 13, 2017.

12. Based upon my experience and investigation in this case, I believe that GOMEZ, as well as other persons as yet unknown, were involved in an on-going conspiracy to facilitate the movement of narcotics into the United States and beyond. Further, based on my experience investigating narcotics traffickers, as well as GOMEZ's post-arrest statements, I believe that GOMEZ used the **Target Devices** to coordinate with co-conspirators regarding the manufacture, distribution and importation of federally controlled substances, and to otherwise further this conspiracy within the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the

memory of the **Target Devices** which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the drug trafficking activities of GOMEZ such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices** described herein.

13. Finally, narcotics trafficking activities require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given these facts, I respectfully request permission to search the **Target Devices** for the period of October 11, 2017, up to and including January 11, 2018.

## **METHODOLOGY**

14. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device

6

or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

//
//
//
//
//
//
//
//
//

## CONCLUSION

17. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that GOMEZ used the **Target Devices** to facilitate the offense of importing fentanyl. Further, the **Target Devices** were likely used to facilitate the offense by transmitting and storing data, which is evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachment B, for the period of October 11, 2017, up to and including January 11, 2018.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Pamela Trongard, TFO
U.S. Homeland Security Investigations

Sworn to before me and subscribed in my presence
before me this ___19___ day of January, 2018

_____
The Hon. Barbara L. Major
United States Magistrate Judge

## ATTACHMENT A-2

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963, is described below:

(2) Black Verizon Motorola Droid Cellular Telephone



**Target Device #2** is currently in the possession of Homeland Security Investigations located at Niels Bohr Court, San Diego, California 92154.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of October 11, 2017 to January 11, 2018:

a. tending to indicate efforts to memorialize the delivery of controlled substances and/or the importation of controlled substances, including, but not limited to: phone logs, messages, photos, contact lists, and financial records;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the manufacture, distribution, importation or delivery of fentanyl or some other federally controlled substances within the United States, or conspiracy thereof;

c. tending to identify co-conspirators, criminal associates, or others involved in the manufacture, distribution, importation or delivery of fentanyl or some other federally controlled substances within the United States, or conspiracy thereof;

d. tending to identify travel to or presence at locations involved in the manufacture, distribution, importation or delivery of fentanyl or some other federally controlled substances within the United States, or conspiracy thereof, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963**.

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.